No. 83-366

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

K. ROBERT FOSTER,

            Plaintiff and Respondent,

    -vs-

REALTY TITLE COMPANY, INC.,
a Montana Corp.,

            Defendant and Appellant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -
REALTY TITLE COMPANY, INC.,
a Montana Corp.,

            Third Party Plaintiff and Appellant,

    -vs-

CHICAGO TITLE INSURANCE CO.,
a corp., and LAND TITLE COMPANY,
a corp.,

            Third Party Defendants and Respondents.

APPEAL FROM:   District Court of the Tenth Judicial District,
               In and for the County of Fergus,
               The Honorable Leonard H. Langen, Judge presiding,
               and The Honorable Jack Shanstrom, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Moulton Law Firm; William S. Mather, Billings, Montana

    For Respondents:

        Anderson-Brown Law Firm; Richard F. Cebull, Billings,
        Montana (Chicago Title Ins.)
        Anderson, Edwards & Molloy; A. Clifford Edwards,
        Billings, Montana   (Foster & Land Title Co.)

                        Submitted on Briefs:  January 5, 1984

                                  Decided:  April 9, 1984

Filed:  APR 9 - 1984

                Ethel M. Harrison
        _____
                        Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Realty Title Company appeals from a judgment in favor of K. Robert Foster, Chicago Title Insurance Company, and Land Title Company entered in the District Court for the Tenth Judicial District, Fergus County. We affirm the District Court.

In 1974, K. Robert and Barbara Foster together with Robert and Anita Johnson, formed Realty Title Company, an abstract and title insurance business. Each held 25 percent of the stock of the corporation which maintained offices in Fergus, Judith Basin and Petroleum counties. Realty Title and Chicago Title Insurance Company entered into a nonexclusive underwriting agreement whereby Realty Title acted as Chicago Title's agent.

In 1979, K. Robert Foster (hereinafter Foster) and the Johnsons entered into the following agreement:

### "TENDER OF STOCK

"THE UNDERSIGNED, K. ROBERT FOSTER, owner of twenty-five (25) shares of the capital stock of REALTY TITLE COMPANY, a Montana corporation, of Lewistown, Montana, herewith tenders that stock to the corporation provided that the corporation acknowledges that the book value of that stock on the date of this tender is Sixty-five Thousand Dollars ($65,000.00) and that the corporation agree to pay said amount for said stock 29% down upon acceptance of this tender with the remaining balance amortized in equal monthly payments over ten (10) years at 8% interest from date, the first monthly installment to be January 1, 1980. Full prepayment privileges will be granted on notice.

"It is acknowledged that the undersigned possesses information and skills acquired in the course of ownership of the shares tendered, and that a substantial factor in computing the book value of those shares is the assurance herewith given that the undersigned will not for ten (10) years engage directly or indirectly in the abstracting or title insurance business in the Montana counties of Fergus, Judith Basin and/or Petroleum nor will the

- 2 -

undersigned instigate, encourage, advise, or participate as an employee or part owner of any such competing business in any of those counties. Accordingly the undersigned herewith proposes and agrees that the remaining balance due for said shares shall be reduced by one-third (1/3) in the event any such competing business establishes offices in such county or counties, unless, upon the establishing of such office the undersigned proves by affidavit that the terms of the foregoing assurance have not been violated. The terms of such assurance are independent of the terms of any similar assurance provided the corporation by any other stockholder.

"This tender is conditional upon the corporation's execution of a Security Agreement in due form pledging the assets of the corporation as security for the payment of unpaid balances for the stock tendered here and in any other tender of even date.

"The undersigned agrees that only the remaining shareholders and directors of Realty Title Company may vote upon the question of acceptance of this tender, and that forthwith upon such acceptance the the undersigned will assign in blank the share so tendered and which are currently escrowed with the Northwestern Bank of Lewistown.

"DATED this 30th day of September, 1979.

"/s/ K. Robert Foster"


"A C C E P T A N C E

"REALTY TITLE COMPANY, a Montana corporation of Lewistown, Montana, upon due resolution by its board of directors with ratification by the stockholders, herewith accepts the foregoing tender of stock on the conditions and obligations set forth herewith.

"DATED This 30th day of September, 1979.

"ATTEST:                         REALTY  TITLE  COMPANY

"/s/Anita A. Johnson      BY: /s/Robert L. Johnson
        Secretary                  Vice President"


The agreement was prepared by Robert L. Johnson pursuant to the desire of Foster to sell his shares and the desire of the Johnsons to have "an effective no direct or indirect competition" provision. There was also further agreement, as

noted in a September 28, 1979 letter from Foster's attorney to Robert Johnson, that:

". . . The non-competition provision shall be so worded that any direct or indirect competition by Bob Foster with Realty Title Company during the contract period will automatically result in a reduction of the unpaid balance due under the contract of one-third. However, such a reduction will not be applicable if Bob is not involved in a competing title agency or was not involved in promoting its establishment in Lewistown, either directly or indirectly.. . ."

Sometime after the execution of the agreement, Foster began to organize Land Title Company, a title insurance business, and opened an office in Lewistown in the later part of 1980. Chicago Title entered into an underwriting agreement with Land Title and then canceled its agreement with Realty Title.

On June 27, 1980, Foster filed a complaint asking for declaratory relief as to the Tender of Stock Agreement. He made three claims: (1) that the provision of the agreement language regarding competition should be declared void pursuant to section 28-2-703, MCA, which prohibits contracts in restraint of trade; (2) that if the court does not find the competition agreement void it should declare that the rights of Realty Title Company are limited to those provided in the agreement; and (3) that the court should declare the amounts due under the agreement.

Realty Title answered and counterclaimed, alleging that Foster defrauded Realty Title and made misrepresentations by agreeing to not compete and then proceeding to set up a competing concern. Realty Title asked the court to reform the agreement so as to make it lawful and equitable. Foster answered, alleging again that the agreement should be declared void.

Foster filed a motion for summary judgment on July 16, 1981, with respect to his claim that the agreement was void according to Section 28-2-703, MCA. Realty Title filed a motion for summary judgment on the same issue. Foster then conceded that Realty Title's position that the agreement was valid and enforceable as a covenant not to compete was correct and the court granted Realty Title's motion.

Foster then moved for summary judgment on his second claim that the rights of the parties are limited to those found in the agreement. On November 13, 1981, Realty Title filed a third party complaint asking that Chicago Title be enjoined from underwriting any insurance in competition with Realty Title. They also asked that Chicago Title and Land Title be found jointly and severally liable with Foster for damages due to breach of the covenant not to compete. Realty Title then filed an answer and amended counterclaim adding the claim against Foster which involved Chicago Title.

On April 1, 1982, Realty Title filed an application for preliminary injunction to restrain Foster and Chicago Title from engaging or competing in the title insurance business in Fergus, Judith Basin and Petroleum counties. The District Court on May 24, 1982, granted Foster's motion for summary judgment on his second claim, dismissed Realty Title's claim against Chicago Title and Land Title and denied Realty Title's application for preliminary injunction. A judgment to that effect was filed July 6, 1982.

The District Court continued the date of the trial in this case pending the outcome of the application for writ of supervisory control filed with this Court by Realty Title. On December 13, 1982, this Court denied the petition.

The District Court calculated the date from which the one-third price reduction should be imposed on Foster in an opinion and order dated May 19, 1983, and the corresponding judgment was filed June 21, 1983. Realty Title appeals both the July 6 and June 21 judgments, raising the following issues:

1. Did the District Court err by granting Foster summary judgment limiting Realty Title's remedy to that provided in the agreement?

2. Did the District Court err by rejecting Realty Title's application for a temporary injunction?

3. Did the District Court err by granting Foster's and Chicago Title's summary judgments on the tort claims?

We will consider the first two issues together.

According to Rule 56(c), M.R.Civ.P., the District Court correctly granted the motion for summary judgment if there were no genuine issues as to any material fact and the moving party was entitled to the judgment as a matter of law. Realty Title argues that, as a matter of law, it was entitled to have Foster and Land Title temporarily enjoined from competing with Realty Title. It contends that the intention of the parties, in executing the agreement, was not to preclude other remedies in the event of breach.

What is persuasive in this case is that the language of the tender of stock agreement is clear and unambiguous. It specifically provides an agreed-upon remedy for breach of the agreement. The evidence shows that the provision was the result of negotiations between the parties. Both K. Robert Foster and Robert Johnson are attorneys and the agreement was drafted by Johnson. Given the clear statement of the parties' agreement as to an appropriate remedy upon breach by

Foster, we turn to the law regarding the granting of injunctions.

> "The universal test of the jurisdiction of a court of equity to issue injunctions is the absence of a legal or other remedy by which the complainant might obtain the full relief to which the facts and circumstances entitle him, and this is likewise the test of its power to restrain breaches of contracts. If the court is satisfied that there is another adequate remedy, it will generally leave the complainant to it and refuse to interfere to restrain violation of the agreement.. . ." 42 Am.Jur. Injunctions § 93.

The remedy provided in the tender of stock agreement was an adequate remedy in the event of breach and Realty Title was therefore not entitled to an order restraining Foster and Land Title.

We are not unaware of the rule of Glacier Campgrounds v. Wild Rivers, Inc. (1978), 182 Mont. 389, 597 P.2d 689, which states that in the absence of a contractual provision expressly limiting the available remedies to that provided, a party may pursue other available remedies. It could be said that in this agreement, the parties took the first step of providing an agreed-upon remedy but that they did not take the second step of specifically limiting the remedies to the one provided. We hold that it was not necessary for the parties to take that second step in this case. Here, by allowing the alternative of injunctive relief, the District Court would have in effect, nullified the remedy provision of the agreement by allowing other remedies before it was shown that the one provided was inadequate. It is undisputed that a court must interpret a contract such that the intentions of the parties are given effect and such that the contract will be lawful, operative and definite. Sections 28-3-301 and 28-3-201, MCA. Applying the rule of Glacier here would defeat the evident intentions of the parties. Thus, to

facilitate the intentions of the parties, the remedy provided in the contract must be declared to be the proper remedy. The summary judgment was properly granted.

As to the last issue, Realty Title contends that the District Court erred by granting Foster's and Chicago Title's summary judgments on the tort claims. In its original answer, Realty Title alleged fraud by Foster and later charged Chicago Title with aiding and assisting Foster in breaching the agreement and interfering with contract rights.

The District Court obviously found no material facts to support Realty Title's claim that Foster was guilty of fraud in executing the tender of stock agreement. The court did conclude that:

> ". . . the language of the stock tender agreement clearly and plainly provides for a reduction in the purchase price of that stock . . . and . . . such language is clear, plain, unambiguous, and all other remedies sought by Realty Title Company are inconsistent and barred--Realty Title Company, through the agreement prepared substantially, if not entirely, by Robert Johnson, expressly provided a remedy for itself . . ."

The District Court also found that Chicago Title properly terminated the nonexclusive agency agreement and properly entered into an underwriting agreement with Land Title. The court concluded that Realty Title's claims of conspiracy and interference of contractual rights were unfounded. Again, without a showing that there was a genuine issue as to a material fact or that the parties were not entitled to the summary judgments as a matter of law, they will stand. Rule 56(c), M.R.Civ.P.

The judgment is affirmed.

John L. Sheehy
_____
Justice

We Concur:

_____
               Chief Justice

_____

_____

_____
               Justices