No. 04-654

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 102

MONTANA MOUNTAIN PRODUCTS,

           Plaintiff and Appellant,

   v.

DAWN CURL and COLUMBUS CUSTOM PRODUCTS,

           Defendants and Respondents.

APPEAL FROM:    The District Court of the Twenty-Second Judicial District,
                  In and For the County of Stillwater, Cause No. DV 2002-19,
                  Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        John Crist and Eric Edward Nord, Crist Law Firm, Billings, Montana

        For Respondents:

        Thomas E. Towe, Towe, Ball, Enright, Mackey & Sommerfeld,
        P.L.L.P., Billings, Montana

        For Amicus Curiae:

        Tom Singer, TTS Civil Trial Attorneys, pllc, Billings, Montana

                        Submitted on Briefs:  March 23, 2005

                              Decided:  April 26, 2005

Filed:

_____
                              Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Montana Mountain Products (MMP) appeals from the grant of summary judgment to Dawn Curl and Columbus Custom Products (CCP).  We affirm.

¶2     We restate the issues on appeal as:

¶3     1. Whether Curl's covenant not to compete is an unlawful restraint on trade.

¶4     2. Whether the District Court erred in granting summary judgment to Curl on MMP's claims of intentional interference with contractual relations and business relations.

## FACTUAL AND PROCEDURAL BACKGROUND

¶5     In 2001 Dawn Curl worked for a company named Montana Cincha, Inc., located in Absarokee, Montana.  Montana Cincha's business almost exclusively involved finishing products for Montana Silversmiths.  These products included watchbands and luggage tags.  The work involved picking up materials from the Montana Silversmiths plant, finishing the materials, and then delivering them back to the plant.

¶6     In August of 2001, MMP purchased Montana Cincha, Inc.  MMP continued the same business operation, with Montana Silversmiths as its only customer.  After hiring Curl, MMP requested that Curl sign an employment contract.  The contract included the following covenant not to compete:

> Curl acknowledges a duty of loyalty to MMP and agrees to refrain from competing with MMP during the term of her employment with MMP.  Curl further agrees to refrain from competing with MMP following the termination of her employment with MMP for a period of 3 years within a 250 mile radius of any MMP location.  Competition means providing subcontract labor for Montana Silversmiths or any other customer of MMP and/or reproducing

2

MMP's designs or products placed in development or production during Curl's employment with MMP for wholesale and/or retail distribution.

Not long thereafter, in January 2002, Curl's employment with MMP ended. By March 2002, CCP, a brand-new company, hired Curl as its plant manager. By all accounts, CCP's line of work is nearly identical to that of MMP. Each finishes products for Montana Silversmiths, and each counts Montana Silversmiths as its only customer. It is undisputed that the existence of CCP has resulted in less business for MMP.

¶7 MMP sued Curl and CCP, claiming breach of contract, intentional interference with contractual relations and intentional interference with business relations. Curl moved for summary judgment, which the District Court granted. MMP now appeals.

## STANDARD OF REVIEW

¶8 We review a grant of summary judgment *de novo*, assessing the same standard under Rule 56, M.R.Civ.P., as the district court. *Barr v. Great Falls Intern. Airport Auth.*, 2005 MT 36, ¶ 13, 326 Mont. 93, ¶ 13, 107 P.3d 471, ¶ 13. The district court must decide, while viewing the offered proof in the light most favorable to the non-moving party, whether there exists any genuine issue of material fact. *Olympic Coast Inv. v. Wright*, 2005 MT 4, ¶ 19, 325 Mont. 307, ¶ 19, 105 P.3d 743, ¶ 19. If none exists, the district court must then decide whether to grant the motion as a matter of law. *Olympic Coast*, ¶ 19.

## DISCUSSION

### ISSUE ONE

¶9 *Whether Curl's covenant not to compete is an unlawful restraint on trade.*

3

¶10    Section 28-2-703, MCA, states, "Any contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, otherwise than is provided for by 28-2-704 or 28-2-705, is to that extent void."  Sections 28-2-704 and 28-2-705, MCA, apply to the sale of the goodwill of a business and the dissolution of a partnership, respectively.  They are not at issue here.

¶11    In addition to these two statutory exceptions to the bar on contracts in restraint of trade, this Court has held that only restraints on trade that are unreasonable are void.  MMP argues that that exception applies here.  An example of this exception arose in *O'Neill v. Ferraro* (1979), 182 Mont. 214, 596 P.2d 197.  There, the owner of the Bozeman Hotel made a covenant with a restaurant tenant that the owner would not lease any other space in the building to any similar restaurants.  *O'Neill*, 182 Mont. at 215-16, 596 P.2d at 198.  After the hotel leased another space to another restaurant, the first restaurant sued.  The owner claimed that the covenant was void under § 28-2-703, MCA.  In considering the claim we stated that:

> [A] reasonable and limited covenant restraining trade will be considered valid.
> Three things are essential to such a covenant:
>
> "(1) it must be partial or restricted in its operation in respect either to time or place; (2) it must be on some good consideration; and (3) it must be reasonable, that is, it should afford only a fair protection to the interests of the party in whose favor it is made, and must not be so large in its operation as to interfere with the interests of the public."

*O'Neill*, 182 Mont. at 218-19, 596 P.2d at 199 (quoting *Eldridge v. Johnston* (Or. 1952), 245 P.2d 239, 250).  We concluded that the covenant satisfied all three prongs of this

4

reasonableness test. It was reasonable because it "is limited to the Bozeman Hotel; the consideration is apparently good as no question to it has been raised; and the covenant is not so large in operation as to affect the interests of the public in any way other than to limit the type of restaurant facility in the Bozeman Hotel." *O'Neill*, 182 Mont. at 219, 596 P.2d at 199.

¶12 We discussed the reasonableness exception in the context of an employment contract in *Dobbins, DeGuire & Tucker, P.C. v. Rutherford, MacDonald & Olson* (1985), 218 Mont. 392, 708 P.2d 577. In *Dobbins*, three employees of a public accountancy partnership signed an employment contract where they promised that if they left the firm and entered into a new public accounting business within twelve months, they would owe their former firm certain damages. The damages were computed as 100 percent of what their former firm (Dobbins) had billed clients that the employees subsequently served in their new business. *Dobbins*, 218 Mont. at 393, 708 P.2d at 578.

¶13 We recognized that *O'Neill* concerned a lease, whereas *Dobbins* concerned an employment contract, but even so "we conclude[d] that similar principles should be applied in the present case." *Dobbins*, 218 Mont. at 396, 708 P.2d at 580. We held that "the written contract provisions do not constitute a restraint prohibited by Section 28-2-703, MCA." *Dobbins*, 218 Mont. at 397, 708 P.2d at 580.

¶14 In the case *sub judice*, the District Court concluded that *Dobbins* does not apply because *Dobbins'* language limits its "scope to the profession of public accounting." Having distinguished *Dobbins*, and thus having concluded that it was improper to apply the

5

reasonableness test, the court determined that § 28-2-703, MCA, is "clear and unambiguous" and that its plain meaning prohibits restraints on trade such as Curl's covenant not to compete.

¶15    Although the court interpreted the *Dobbins* rationale too narrowly, it nonetheless concluded that the covenant was void as a restraint on trade, in violation of § 28-2-703, MCA. Even though the District Court reached the right result, we take this opportunity to correct the impression that the *Dobbins'* rationale is limited to the profession of public accounting. First, there is no indication from the facts of *Dobbins* that the employees involved were partners. In fact, we explicitly stated that the partnership dissolution exception of § 28-2-705, MCA, was not at issue. *Dobbins*, 218 Mont. at 395, 708 P.2d at 579. Second, and more importantly, although we stated that the reasonableness test should be applied in "the profession of public accounting," our reasons for applying the test were not simply because of the specific profession involved. Instead, we applied the test because we were considering whether a covenant not to compete, *qua* a covenant not to compete, was reasonable. We have recognized this broader reading of *Dobbins* before, *see State Med. Oxygen & Supply, Inc. v. Am. Med. Oxygen Co.* (1989), 240 Mont. 70, 74, 782 P.2d 1272, 1275 ("In *Dobbins*, this Court determined that [the reasonableness] test should also be applied to restrictive covenants that are found within employment contracts."), and have restated the broad applicability of the reasonableness exception. *Daniel v. Thomas, Dean & Hoskins, Inc.* (1990), 246 Mont. 125, 144, 804 P.2d 359, 370 ("[U]nder certain factual circumstances a covenant restraining a lawful profession, trade or business of any kind may

6

be acceptable if it passes a three part test of reasonableness."). Therefore, under *Dobbins*, the District Court should have applied the reasonableness test and then determined whether Curl and MMP's covenant not to compete was reasonable. However, because we conclude that the covenant is unreasonable, we nonetheless affirm the judgment of the District Court.

¶16    The covenant not to compete fails the third prong of the test. That prong, again, is that the covenant "must be reasonable, that is, it should afford only a fair protection to the interests of the party in whose favor it is made, and must not be so large in its operation as to interfere with the interests of the public." *O'Neill*, 182 Mont. at 218-19, 596 P.2d at 199 (quoting *Eldridge*, 245 P.2d at 250). We have had little opportunity to examine this prong in the context of an employer-employee relationship. On the two occasions where we have held, or at least suggested, that an employment contract's covenant not to compete satisfied the prong, the covenant only restricted the employee's stockholdings or profits. *See Daniel*, 246 Mont. at 144-45, 804 P.2d at 371 (portability of stock tied to non-competition); *Dobbins*, 218 Mont. at 396, 708 P.2d at 579 (financial penalty for violating covenant's conditions). Here, on the other hand, Curl is outright prohibited from practicing her trade within 250 miles of her former employer.

¶17    MMP cites a number of foreign cases upholding covenants of broader distance and length than Curl's. However, in all of these cases either the law was more permissive than Montana's, *see, e.g.*, *McAlpin v. Coweta Fayette Surgical Assoc., P.C.* (Ga. Ct. App. 1995), 458 S.E.2d 499, 501, or the employee had other realistic options within which to pursue her trade. *See, e.g.*, *Riccardi v. Modern Silver Linen Supp. Co., Inc.* (N.Y. App. Div. 1974), 356

7

N.Y.S.2d 872, 879 (stating that the employee could practice, just not with former customers); *Trans-Am. Collections, Inc. v. Cont'l Account Servicing House, Inc.* (D. Utah 1972), 342 F.Supp. 1303, 1306 (salesman was only restricted from practicing in a limited area and could conduct sales in many other enterprises); *Mills v. Murray* (Mo. Ct. App. 1971), 472 S.W.2d 6, 12 (explaining that the effect of the restrictions was that employee could not solicit with 36 doctors, when there were 8,000 doctors in the state). Here, based on the information in the offers of proof, Curl's only option to practice her trade in the vicinity of where she resides is to work in some way for a subcontractor of Montana Silversmiths. That, however, is exactly what her covenant not to compete prohibits. Because the covenant prohibits Curl from engaging in her profession, we conclude that it is unreasonable and therefore an unlawful restraint on trade.

### ISSUE TWO

¶18 *Whether the District Court erred in granting summary judgment to Curl on MMP's claims of intentional interference with contractual relations and business relations.*

¶19 MMP next claims that Curl committed the torts of interference with contractual relations and interference with business relations. MMP premises both of these claims on the assumption that Curl's covenant not to compete is valid. We have, however, concluded that it is void. Therefore, both of MMP's tortious interference claims fail.

### CONCLUSION

¶20 Whether § 28-2-703, MCA, is viewed as an absolute restriction on restraints on trade (the District Court's rationale) or a restriction on unreasonable restraints (the rationale of

8

*O'Neill* and *Dobbins*), the covenant in the present case is void. The covenant not to compete is invalid and MMP has no claim against Curl for intentional interference with contractual or business relations. We affirm the judgment of the District Court.


/S/ W. WILLIAM LEAPHART


We Concur:

/S/ KARLA M. GRAY
/S/ JIM RICE
/S/ PATRICIA O. COTTER
/S/ BRIAN MORRIS