
DA 07-0115

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 4

ACCESS ORGANICS, INC.,

      Plaintiff and Appellee,

  v.

ANDY HERNANDEZ,

      Defendant and Appellant,

   and

MIKE VANDERBEEK,

      Defendant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eleventh Judicial District, In and For the County of Flathead, Cause No. DV 06-836-B Honorable Katherine R. Curtis, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

            David H. Bjornson, Bjornson Law Offices, P.C., Missoula, Montana

      For Appellee:

            Chad M. Wold and Meghan M. McKeon, Wold Law Firm, P.C., Whitefish, Montana

Submitted on Briefs:  December 6, 2007

Decided:   January 3, 2008

Filed:

_____
                Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Access Organics, Inc., sued two of its former employees, Andy Hernandez and Mike Vanderbeek, to enforce non-compete and non-disclosure agreements. The District Court issued a temporary restraining order prohibiting Hernandez or Vanderbeek from competing with Access Organics and from disclosing any trade secrets. The court also issued a preliminary injunction, restraining Hernandez and Vanderbeek from contacting any of Access Organics's customers. Hernandez appeals, arguing the District Court erred in issuing the preliminary injunction because the non-compete agreement is unenforceable as a matter of law. We reverse and remand.

¶2     We restate the issue as follows:

¶3     Did the District Court err in concluding that the non-compete agreement was enforceable as a matter of law, and thus in granting preliminary injunctive relief to Access Organics?

## BACKGROUND

¶4     On April 25, 2005, Bonnie Poux hired Andy Hernandez ("Hernandez") to sell organic produce for her sole proprietorship, Access Organics Sales ("Access Organics"). In July 2005, Hernandez was promoted to sales manager. On August 29, 2005, four months after his employment began, Hernandez signed a non-compete agreement and a non-disclosure agreement. The non-compete agreement provided in relevant part:

> For good consideration and as an inducement for Access Organics (the Company) to employ Andy Hernandez, the undersigned Employee hereby agrees not to directly or indirectly compete with the business of the Company and it successors and assigns during the period of employment and for a period of two years following termination of employment . . . .

2

¶5 Shortly after Access Organics began experiencing financial difficulties and laid off Hernandez and several other employees. Hernandez voluntarily returned to the company on a part-time basis but resigned a short time later. Hernandez then entered into business with another former Access Organics employee, Mike Vanderbeek ("Vanderbeek"). Full Circle Sales, Hernandez's new company, was located in the Kalispell area and dealt in both organic and conventional produce.

¶6 Access Organics brought suit to enforce the non-compete and non-disclosure agreements signed by Hernandez and Vanderbeek. Access Organics applied for injunctive relief, including a temporary restraining order, and filed a complaint against Hernandez and Vanderbeek. The complaint alleged that Hernandez and Vanderbeek violated their non-compete and non-disclosure agreements, breached their respective contracts, and intentionally sought to interfere with Access Organics's prospective economic advantage by operating Full Circle Sales.

¶7 The District Court granted the temporary restraining order, which stated: "Defendants are restrained from owning, operating, and managing any business engaged in the same business as Access Organics, Inc., within Flathead County, MT, [and] consulting with, or being employed in any capacity, by any company engaged in the same business as Access Organics and using, disclosing, or divulging to others, trade secrets, confidential information, or proprietary data of Access Organics."

¶8 The District Court held a hearing to determine whether Access Organics was entitled to further injunctive relief. Access Organics presented affidavits from several of their customers which testified that they had been contacted by Hernandez or Vanderbeek

on behalf of Full Circle Sales, in an attempt to solicit their business. The District Court found that Hernandez and Vanderbeek used contacts acquired prior to their employment with Access Organics, as well as contacts gained while employed with Access Organics.

¶9 The District Court held that Hernandez and Vanderbeek violated their non-compete agreements by owning, operating, and managing Full Circle Sales. The District Court found that the non-compete agreements were enforceable, because they were restricted in length to two years, were based on good consideration ("continuation of Defendants' employment, and therefore, income"), and did not interfere with the public interest. Thus, the District Court granted a preliminary injunction in favor of Access Organics, enjoining Hernandez and Vanderbeek "from contacting any current or former client of Access Organics . . . with regard only to any aspect of the business of organic produce and from using, disclosing, or divulging to others the list of Access Organics' [sic] customers . . . ." Only Hernandez appeals.

## STANDARD OF REVIEW

¶10 Where the district court grants or denies injunctive relief based upon conclusions of law, we review the conclusions of law to determine whether they are correct. *Benefis Healthcare v. Great Falls Clinic*, 2006 MT 254, ¶ 11, 334 Mont. 86, ¶ 11, 146 P.3d 714, ¶ 11.

## DISCUSSION

¶11 **Did the District Court err in concluding that the non-compete agreement was enforceable as a matter of law, and thus in granting preliminary injunctive relief to Access Organics?**

4

¶12 Normally, we review a district court's order granting or denying preliminary injunctive relief for abuse of discretion only. *Knudson v. McDunn*, 271 Mont. 61, 64, 894 P.2d 295, 297 (1995) (citation omitted). However, where the district court's decision to grant injunctive relief is premised on conclusions of law, there is no discretion involved. *Knudson*, 271 Mont. at 64, 894 P.2d at 297. In such cases, we review the district court's conclusions of law for correctness. *Knudson*, 271 Mont. at 64, 894 P.2d at 297.

¶13 Here, the District Court concluded as a matter of law that the agreement was enforceable and did not constitute an unreasonable restraint of trade under § 28-2-703, MCA. Thus, the court enjoined Hernandez from contacting any current or former customer of Access Organics, and from using or disclosing Access Organics's customer list. Because the District Court granted the injunctive relief based solely on a conclusion of law, we will review the court's conclusions of law for correctness.

¶14 *Is the non-compete agreement an unreasonable restraint of trade in violation of § 28-2-703, MCA?*

¶15 Contracts in restraint of trade are disfavored: "Any contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, otherwise than is provided for by 28-2-704 or 28-2-705, is to that extent void." Section 28-2-703, MCA.

¶16 However, we have upheld agreements which impose reasonable restrictions on trade. To be upheld as reasonable, a covenant not to compete must meet three requirements:

5

(1) [I]t must be partial or restricted in its operation in respect either to time or place;

(2) it must be on some good consideration; and

(3) it must be reasonable, that is, it should afford only a fair protection to the interests of the party in whose favor it is made, and must not be so large in its operation as to interfere with the interests of the public.

*Montana Mountain Products v. Curl*, 2005 MT 102, ¶ 11, 327 Mont. 7, ¶ 11, 112 P.3d 979, ¶ 11 (citing *O'Neill v. Ferraro*, 182 Mont. 214, 218-19, 596 P.2d 197, 199 (1979)). As the party seeking to enforce the non-compete agreement, Access Organics bears the burden of proving that the agreement does not violate § 28-2-703, MCA. *Daniels v. Thomas, Dean & Hoskins, Inc.*, 246 Mont. 125, 144, 804 P.2d 359, 370 (1990); *State Med. Oxygen v. Amer. Med. Oxygen*, 240 Mont. 70, 74, 782 P.2d 1272, 1275 (1989); *First American Ins. Agency v. Gould*, 203 Mont. 217, 223, 661 P.2d 451, 454 (1983).

¶17    Since Montana's public policy strongly disfavors agreements in restraint of trade, as discussed above, we construe non-compete agreements strictly:

Contracts not to compete are by their nature in restraint of trade and are not favorably regarded by the courts. In interpreting or construing contracts which impose restrictions on the right of a party to engage in a business or occupation, the court is governed by a strict rule of construction. The agreement will not be extended by implication, and it will be construed in favor of rather than against the interest of the covenantor.

*Dumont v. Tucker*, 250 Mont. 417, 421, 822 P.2d 96, 98 (1991) (citing 54 Am. Jur. 2d Monopolies Etc. § 521).

¶18    <u>Is the agreement supported by the necessary "good consideration"?</u>

¶19    Hernandez argues that the non-compete agreement is invalid and unenforceable, because it is not supported by good consideration. Access Organics contends that

6

Hernandez's salary and continued employment supplied sufficient consideration. Section 28-2-801, MCA, provides that "[a]ny benefit conferred or agreed to be conferred upon the promisor by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor is a good consideration for a promise."

¶20    Consideration exists if the employee enters into the non-compete agreement at the time of hiring. During pre-employment negotiations, the employee and the employer engage in a bargained-for exchange: the employer obtains the desired non-compete agreement, and in return, the employee receives employment. The non-compete agreement is simply a condition of employment which the employee takes into account when accepting or rejecting the employment offer. Here, the agreement purports to offer employment in exchange for Hernandez's promise not to compete: "as an inducement for Access Organics . . . to employ Andy Hernandez, [he] . . . hereby agrees not to . . . compete . . . ."

¶21    However, Hernandez signed the agreement more than four months after accepting his initial employment offer from Access Organics. The record clearly shows that the agreement was not signed as part of Access Organics's pre-employment negotiations with Hernandez. The basic precepts of black letter contract law teach us that "past consideration is not sufficient to support a promise." *See e.g. Public Employees Ass'n v. Office of Gov.*, 271 Mont. 450, 455, 898 P.2d 675, 678 (1995) (citation omitted). Thus, prior work may not serve as consideration. *Public Employees Ass'n*, 271 Mont. at 450,

7

898 P.2d at 678. Access Organics's initial offer of employment to Hernandez is past consideration and may not serve as consideration for the non-compete agreement signed four months later.

¶22 However, "afterthought agreements"—non-compete agreements signed by employees after the date of hire—are not automatically invalid. Jordan Leibman & Richard Nathan, *The Enforceability of Post-Employment Noncompetition Agreements Formed After At-Will Employment Has Commenced: The "Afterthought" Agreement*, 60 S. Cal. L. Rev. 1465 (1987) (coining the term "afterthought agreements"). Non-compete agreements entered into by existing employees may be supported by independent consideration. For example, an employer may provide an employee with a raise or promotion in exchange for signing a non-compete agreement. In such instances, the salary increase or promotion serves as good consideration. Access to trade secrets or other confidential information may also suffice as a form of good consideration. *Daniels*, 246 Mont. at 145, 804 P.2d at 371. In each of these examples, the employee receives a benefit which constitutes good consideration in exchange for his or her promise not to compete.

¶23 Hernandez did earn a promotion and a raise during his time with Access Organics, but he was not asked to sign the non-compete agreement until a month after he was promoted. As discussed above, past consideration cannot serve as good consideration for a present agreement. *Public Employees Ass'n*, 271 Mont. at 450, 898 P.2d at 678. Hernandez testified that he did not receive any independent consideration, such as access

8

to trade secrets, in exchange for signing the agreement.  Access Organics failed to present any evidence to the contrary.

¶24     Access Organics argues that the continued employment and salary that Hernandez received suffced as good and independent consideration, citing *Langager v. Crazy Creek Products, Inc.*, 1998 MT 44, 287 Mont. 445, 954 P.2d 1169.  In *Langager*, we upheld an employer's revisions to the employee handbook, because "Langager continued to work for Crazy Creek, thereby supplying the necessary consideration" for the changes in the terms of her employment.  *Langager,* ¶ 20.

¶25     However, *Langager* is distinguishable on several grounds.  First, in *Langager*, we found that the employees had ample opportunity to sufficiently bargain for the manual's terms.  *Langager,* ¶ 20.  By contrast, Hernandez had no input as to the terms of the boilerplate non-compete agreement drafted by Access Organics and its lawyers.  Second, non-compete agreements are disfavored and will be interpreted strictly and to the advantage of the employee.  *Dumont,* 250 Mont. at 421, 822 P.2d at 98.   When a current employee is required to sign a non-compete agreement, the employer and employee are not on equal bargaining ground: the employee is vulnerable to heavy economic pressure to sign the agreement in order to keep his job.  *See e.g.* Leibman & Nathan, 60 S. Cal. L. Rev. at 1491.  Thus, in the context of non-compete agreements, we require clear evidence that the employee received good consideration in exchange for bargaining away some of his post-employment freedom to practice the profession or trade of his choice.

¶26     Some states have held that continued employment, absent other independent consideration, fails to suffice as good consideration.  *See e.g. Labriola v. Pollard Group,*

9

*Inc.*, 100 P.3d 791, 794 (Wash. 2004) ("A noncompete agreement entered into after employment will be enforced if it is supported by independent consideration . . . . Independent, additional, consideration is required for the valid formation of a modification or subsequent agreement. There is no consideration when one party is to perform some additional obligation while the other party is simply to perform that which he promised in the original contract.") (citations and internal quotation marks omitted). We decline to broadly hold that continued employment may never serve as sufficient consideration. For example, where an at-will employee is specifically guaranteed a definite period of continued employment, the employee receives consideration in the form of contracted-for job security. However, here, no such promise of continued employment was made. Hernandez was an at-will employee. He did not receive any additional job security or extended term of employment in exchange for signing the agreement. Access Organics could have terminated his employment at any point. In such circumstances, the simple fact of the employee's continued employment may not serve as sufficient consideration.

¶27   In sum, the agreement between Hernandez and Access Organics is not supported by any of the above-mentioned forms of consideration. The agreement provides "[f]or good consideration and as an inducement for Access Organics (the Company) to employ Andy Hernandez, the undersigned Employee hereby agrees not to directly or indirectly compete . . . ." Yet, it was signed more than four months after Hernandez was hired. Hernandez did not receive a promotion, a raise, or access to confidential information in exchange for signing this agreement. Nor did Hernandez receive any additional training

10

or any promise of continued employment for a specified period of time. In short, Hernandez did not receive any benefit, and Access Organics did not incur any obligation or detriment that would serve as consideration to support this non-compete agreement.

¶28 We conclude that the District Court erred by finding that the "continuation of Defendants' employment, and therefore, income" sufficed as consideration. We hold that Access Organics failed to meet its burden of proof by showing that the agreement was supported by good consideration. An agreement not to compete must satisfy all three prongs of the reasonableness test in order to be upheld. *State Med. Oxygen*, 240 Mont. at 74, 782 P.2d at 1275. Since the agreement between Hernandez and Access Organics lacks consideration, we need not reach the other two prongs. The agreement violates § 28-2-703, MCA, and is unenforceable.

## CONCLUSION

¶29 We conclude that the covenant not to compete between Andy Hernandez and Access Organics is unenforceable for lack of consideration. Thus, the District Court erred in determining that the agreement was enforceable as a matter of law. Since the agreement is unenforceable as a matter of law, the District Court also erred in granting the preliminary injunction against Hernandez. Thus, we reverse and remand for further proceedings consistent with this opinion.


/S/ W. WILLIAM LEAPHART

11

We concur:


/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS